UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MICHAEL DELEMAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HIGHLEVEL, INC.,<br><br>　　　　Defendant. | CIVIL ACTION NO. 3:25-CV-01284<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Before the Court are Plaintiff John Michael Deleman's ("Deleman") motion for a temporary restraining order and preliminary injunction (Doc. 3) and Defendant HighLevel, Inc.'s ("HighLevel") motion to compel arbitration. (Doc. 14). Deleman initiated this action on July 9, 2025, by filing a complaint against HighLevel in the Luzerne County Court of Common Pleas. (Doc. 1-2). On July 14, 2025, HighLevel removed this action to federal court due to diversity jurisdiction. (Doc. 1). For the following reasons, HighLevel's motion to compel arbitration (Doc. 14) is **GRANTED** and Deleman's motion for a temporary restraining order and preliminary injunction (Doc. 3) is **DENIED**.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Unless otherwise indicated, the following factual summary is taken from the parties' filings related to the instant motions. Deleman is a businessman who operates Elite Marketing Authority Co. ("EMA"), a marketing SaaS[1] business. (Doc. 1-2, at 3). HighLevel is a digital

---

[1] "SaaS" stands for "software as a service" and is a software distribution method in which a service provider gives customers access through the internet to applications, usually

services provider and platform which provides marketing agencies with various tools to design websites, manage social media, manage client-relations, and manage client communications. (Doc. 1-2, at 3).

The parties agree that HighLevel provided digital services to EMA. (Doc. 14-5, ¶¶ 1, 15; Doc. 22, ¶¶ 1, 15). According to Deleman, EMA first began utilizing HighLevel's services in 2019 when Deleman made a verbal agreement with HighLevel CEO Shaun Clark ("Clark") which allowed EMA to use HighLevel's platform and services without being subject to HighLevel's standard terms of service. (Doc. 22, ¶¶ 1, 15). HighLevel neither confirms nor denies that Deleman made an agreement with Clark in 2019. (Doc. 30, at 5).

The parties agree that on November 30, 2024, Deleman accessed HighLevel's website, encountered HighLevel's terms of service, and clicked a box accepting those terms of service. (Doc. 14-5, ¶¶ 1, 15; Doc. 22, ¶¶ 1, 15). Deleman claims that he already had access to HighLevel's services and platform since 2019 based on his verbal agreement with Clark and only encountered the terms of service while trying to obtain a 50% discount on HighLevel's services. (Doc. 14-5, ¶¶ 1, 15). During the Court's July 23, 2025, hearing on the pending motions, Deleman admitted to clicking a box regarding the terms of service, but stated he could not remember what the text next to the box said. HighLevel asserts and provides a declaration by Wesley Williams, ("Williams") HighLevel's Vice President of Marketing, stating that text next to the box read "[b]y continuing, you agree to HighLevel's Terms of Service and Privacy Policy. You consent to receive marketing texts and calls (including automated), with standard rates applying." (Doc. 14-6, at 3).

---

ones developed and owned by the provider. *SaaS*, Dictionary.Com, DICTIONARY.COM, https://www.dictionary.com/browse/SaaS (last visited Jul. 24, 2025).

HighLevel's 2024 terms of service state:

BY COMPLETING THE REGISTRATION PROCESS, CREATING AN ACCOUNT OR ACCESSING OR USING ANY OF THE PLATFORM AND/OR SERVICES, YOU REPRESENT THAT (1) YOU HAVE READ, UNDERSTAND, AND AGREE TO BE BOUND BY THESE TERMS OF SERVICE, (2) YOU ARE OF LEGAL AGE TO FORM A BINDING CONTRACT WITH HIGHLEVEL, (3) THE INFORMATION YOU PROVIDED IN CONNECTION WITH YOUR REGISTRATION FOR THE PLATFORM/SERVICES IS TRUE, ACCURATE AND COMPLETE, AND (4) YOU HAVE THE AUTHORITY TO ENTER INTO THESE TERMS OF SERVICE PERSONALLY OR ON BEHALF OF THE BUSINESS ENTITY YOU HAVE NAMED AS THE USER, AND TO BIND THAT BUSINESS ENTITY TO THE AGREEMENT. CERTAIN PORTIONS OF THE PLATFORM MAY BE SUBJECT TO "OPEN SOURCE" OR "FREE SOFTWARE LICENSES". SUCH COMPONENTS WILL BE GOVERNED BY THE TERMS OF THEIR RESPECTIVE TERMS OF USE AND NOT BY THESE TERMS.

(Doc. 14-6, at 32).

The terms of service contain a merger clause which states:

Except as noted below, these Terms constitute the sole and entire agreement between you and HighLevel with respect to the Platform and supersede all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to the Platform. These Terms may not be altered, supplemented, or amended by the use of any other document(s) unless such document is signed by an authorized representative of HighLevel.

(Doc. 14-6, at 52).

The terms of service also contain an arbitration clause which states:

THIS AGREEMENT CONTAINS A MANDATORY ARBITRATION CLAUSE AND A CLASS ACTION WAIVER THAT WAIVES YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION. YOU MUST REVIEW THIS DOCUMENT IN ITS ENTIRETY, INCLUDING THE DISPUTE RESOLUTION SECTION BELOW, BEFORE USING THE PLATFORM.

(Doc. 14-6, at 32).

Regarding arbitration, the terms of service further clarify that:

> Any controversy or claim arising out of or relating to these Terms shall be exclusively settled by arbitration administered by the American Arbitration Association in accordance with Commercial Arbitration Rules, then in effect. This arbitration provision is governed by the Federal Arbitration Act. The arbitration proceedings shall be held in Dallas, Texas. Any arbitration award may be entered in a court of competent jurisdiction.

(Doc. 14-6, at 53).

Finally, the terms of service contain a forum selection clause which states, "[t]he laws of the State of Texas will govern these Terms of Service and any disputes under them, without giving effect to any principles of conflict of laws." (Doc. 14-6, at 53).

Deleman claims that as of June 2025, he created 600 client workspaces for over 242 clients using HighLevel's services and platform. (Doc. 1-2, at 4). According to Deleman, he was generating $18,802 a month through his use of HighLevel's platform. (Doc. 1-2, at 4). This came to an end on June 17, 2025, when HighLevel terminated EMA's account, blocked Deleman from accessing its platform, and ceased all services it provided Deleman and EMA. (Doc. 10-9, at 3). Deleman also claims that after HighLevel terminated EMA's account, he lost access to "all business-critical data: client records, CRM logs, dispute documentation, Stripe receipts, and contractual terms." (Doc. 1-2, at 4). EMA's clients began to request refunds and threaten legal action against Deleman after he and EMA lost access to HighLevel's platform. (Doc. 10-11).

On July 9, 2022, Deleman filed a complaint asserting nine counts under Pennsylvania law. Count I alleges HighLevel is liable for tortious interference with business relationships. (Doc. 1-2, 5-6). Count II alleges HighLevel is liable for Intentional Infliction of Emotional Distress. (Doc. 1-2, at 6-7). Count III alleges HighLevel is liable for conversion. (Doc. 1-2, at 7-8). Count IV alleges HighLevel is liable for negligent misrepresentation and fraudulent

4

inducement. (Doc. 1-2, at 8-9). Count V alleges HighLevel is liable for defamation and business disparagement. (Doc. 1-2, at 9-10). Count VI alleges HighLevel is liable for tortious interference with contractual relations. (Doc. 1-2, at 11-12). Count VII alleges that HighLevel is liable for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Doc. 1-2, at 12-13). Count VIII alleges that HighLevel is liable for unjust enrichment. (Doc. 1-2, at 13-14). Count IX alleges HighLevel is liable for civil conspiracy. (Doc. 1-2, at 14-15).

Deleman claims HighLevel is liable for $1,259,794.52 in damages. (Doc. 1-2, at 17). This damage calculation is made up of an alleged $1,184,526 in lost revenue, $21,352.16 lost in loan defaults and "chargebacks," $37,192.88 in business rebuilding and recovery costs, and $16,458.48 in wasted advertising spending. (Doc. 1-2, at 16-17).

On July 15, 2025, Deleman filed an emergency motion for a temporary restraining order and preliminary injunction along with supporting exhibits and a preemptive objection to arbitration. (Doc. 3; Doc. 4; Doc. 5). Deleman's motion asks the Court to order HighLevel to reinstate EMA's account and all associated sub-accounts as of June 17, 2025. (Doc. 3, at 3). Deleman also asks the Court to enjoin HighLevel from "further interference with [Deleman's] business operations." (Doc. 3, at 3). On July 16, 17, and 21, 2025, Deleman filed supplemental exhibits supporting his motion. (Doc. 10; Doc. 16; Doc. 32).

On July 16, 2025, HighLevel filed a motion to compel arbitration, along with a brief in support, a statement of material facts, and supporting exhibits. (Doc. 14; Doc. 14-3; Doc. 14-5; Doc. 14-6). That same day, Deleman filed a brief in opposition to HighLevel's motion to compel arbitration. (Doc. 15). On July 18, 2025, Deleman filed an answer to HighLevel's statement of facts. (Doc. 22). On July 21, 2025, HighLevel filed a brief in opposition to

5

Deleman's motion for a temporary restraining order and preliminary injunction and a reply brief supporting its motion to compel arbitration. (Doc. 29; Doc. 30). On July 23, 2025, the Court heard arguments and testimony on the pending motions.[2] Accordingly, the motions are ripe for disposition.

## II. MOTION TO COMPEL ARBITRATION

### A. LEGAL STANDARD

"It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). However, "the cardinal principle of the law of arbitration is that 'under the [FAA, arbitration] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.'" *Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). The Federal Arbitration Act provides that "[a] written provision in any. . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . .shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity. . ." 9 U.S.C. § 2. The

---

[2] On July 17, 2025, Deleman filed two motions to clarify the scope of the relief sought under his motion for a temporary restraining order and preliminary injunction. (Doc. 18; Doc. 19). Further, on July 21, 2025, Deleman filed a motion to file a *sur reply* brief in opposition to HighLevel's motion to compel arbitration along with the proposed *sur reply* brief. (Doc. 31; Doc. 31-2). Deleman addressed the scope of the relief sought and the arguments contained in his *sur reply* brief during the Court's July 23, 2025, hearing. Accordingly, Deleman's motions to clarify the scope of relief sought (Doc. 18; Doc. 19), and motion to file a *sur reply* brief (Doc. 31) are **DENIED** as moot.

6

Supreme Court has interpreted the FAA to require courts to "rigorously enforce arbitration agreements according to their terms, including terms that 'specify with whom the parties choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'" *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) (internal citations omitted); *see also MacDonald v. CashCall, Inc*, 883 F.3d 220, 226 (3d Cir. 2018). "Federal law determines whether an issue governed by the FAA is referable to arbitration." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). "Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n. 32 ("[The FAA] creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate...."). Section 2 of the FAA sets forth the basic rule of federal law:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Nevertheless, notwithstanding the supremacy of federal law, courts look to ordinary state law principles of contract formation to make this determination. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003); *see also Gay,* 511 F.3d at 388.

To compel arbitration, a court must determine (1) the validity of the arbitration agreement and (2) whether the dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also Bey v. Citi Health Card*, Civ. Action No. 15-6533, 2017 WL 2880581, at *4–5 (E.D. Pa. July 6, 2017). Under the Supreme Court's longstanding severability rule, "a party cannot avoid arbitration by attacking the contract containing the arbitration clause as a whole (the 'container contract'). Rather, the

party opposing arbitration must challenge 'the arbitration clause itself.'"[3] *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967). When "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such as unconscionability." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004); *see also Gay*, 511 F.3d at 388 ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, (1996)).

The Court will consider the motion to compel arbitration under the motion for summary judgment standard of Rule 56. "The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration." *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *4 (D.N.J. Dec. 29, 2022) (citing to *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013)). First, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d

---

[3] Notably, Deleman argues that a contract was never formed. (Doc. 15, at 5-6). Deleman's arguments that the arbitration clause is unconscionable also apply to the terms of service as a whole because he argues that he never assented to the terms and the negotiations in forming the contract were one sided. (Doc. 15, at 6-7). Even though Deleman is challenging the terms of service as a whole, the Court will nonetheless consider Deleman's arguments because Deleman is a *pro se* plaintiff and the Court must "construe [Deleman's] *pro se* filings liberally." *Harris v. Credit Acceptance Corp.*, No. 22-1404, 2022 WL 4533854, at *1 (3d Cir. Sept. 28, 2022) (nonprecedential).

at 776 (quotation marks omitted); *see Lepore v. SelectQuote Ins. Servs., Inc.*, No. 22-3390, 2023 WL 8469761, at *2 (3d Cir. Dec. 7, 2023). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Guidotti*, 716 F.3d at 776 (quotation marks omitted). At the July 23, 2025, hearing, the parties agreed to the application of the summary judgment standard, and that no further discovery was necessary as all documents have already been placed into the record before this Court. *See Guidotti*, 716 F.3d at 776. Given the extensive record in this case, most of which has been provided to the Court by Deleman, the Court finds that there is no disadvantage to him, particularly as he indicated at the time of the hearing that there was no other discovery he needed. *See Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 330 (3d Cir. 2022). As such, the Court will consider the motion to compel arbitration under the Rule 56 summary judgment standard.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the

non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

B. D<span>ISCUSSION</span>

HighLevel avers that this Court must compel arbitration because Deleman agreed to HighLevel's terms of service on November 30, 2024, and those terms of service are a binding contract with an arbitration clause. (Doc. 14-3). Deleman offers four reasons for why the terms of service's arbitration clause does not apply in this case: 1) he never assented to the terms of HighLevel's terms of service, 2) the arbitration clause is unconscionable, 3) he had an oral agreement with Clark in 2019, and 4) his claims fall outside of the scope of the

arbitration clause. (Doc. 15, at 5-12). All four reasons fail. There is no genuine issue of material fact that Deleman agreed to the HighLevel's terms of service when he clicked the box accepting the terms of service. Deleman's argument focuses on a misunderstanding of the concept of "consideration." Repeatedly throughout the argument and hearing, Deleman stated that he did not "consider" the terms of service while reading caselaw that (correctly) indicated that consideration was a requirement of a binding contract.[4] Deleman does not dispute that he received a 50% discount for signing up for a new contract with HighLevel, and for accepting the terms of conditions. Indeed, he repeatedly stated at the hearing that he accepted the terms of service in exchange for the discount.

Further, during the hearing, Deleman stated that he made around $120,000 in sixth months using HighLevel's digital software and described other digital platforms and services which provide similar services to HighLevel's. Based on this, Deleman is not an unsophisticated user of technology who cannot be expected to understand that digital service providers typically require users to agree to their terms of service prior to using their services. Under Texas law, a party may assent to the terms of a contract through a so-called "clickwrap" agreement where a party clicks on a box stating they agree to terms of service listed in a document or on a webpage. *See Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 532 (5th

---

[4] Deleman admits to using generative artificial intelligence ("AI") tools while drafting his filings and has filed certificates of use with the Court. (Doc. 29-2; Doc. 30-2; Doc. 31-3). During the Court's July 23, 2025, hearing, Deleman appeared to be relying entirely on AI generated arguments and citations. The Court directly asked Deleman whether he read the cases he cited and he claimed he did. Given that Deleman did not appear to encounter an explanation of the term "consideration" while preparing for the hearing, the Court is skeptical of this claim. The Court reminds Deleman that false representations to the Court may warrant sanction.

Cir. 2020); *see also Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205 (Tex. 2021). A user may agree to an arbitration clause through clickwrap. *See Aerotek, Inc.*, 624 S.W.3d at 210. Thus, by clicking on the box stating he agreed to the terms of service, Deleman assented to the terms of service's arbitration clause and his first argument to prevent arbitration fails.

Deleman also argues that the terms of service do not apply because they are unconscionable due to the power imbalance between HighLevel and himself and the lack of opportunity to negotiate over the terms of service. (Doc. 15, at 6-8). However, this argument fails because it applies to all clickwrap agreements and clickwrap agreements are valid under Texas law. *See Realogy Holdings Corp.*, 957 F.3d at 532; *see also Aerotek, Inc.*, 624 S.W.3d at 205.

Deleman next argues that the contract does not apply because he had an oral agreement with Clark, HighLevel's CEO, from 2019. (Doc. 15, at 6). This argument fails because the terms of service contain a merger clause which explicitly contemplates prior oral agreements and states "these Terms constitute the sole and entire agreement between you and HighLevel with respect to the Platform and supersede all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to the Platform." (Doc. 14-6, at 52). Because of this merger clause, the Court cannot consider any prior agreement, oral or otherwise, between Deleman and Clark. *See Bandera Drilling Co. v. Sledge Drilling Corp.*, 293 S.W.3d 867, 871 (Tex. App. 2009) (stating "[w]hen a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract, and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence"). Accordingly, Deleman's prior oral agreement with Clark does not prevent arbitration.

Finally, Deleman avers that his claims fall outside of the arbitration agreement. (Doc. 15, at 8-11). However, the terms of service state that "[a]ny controversy or claim arising out of or relating to these Terms shall be exclusively settled by arbitration administered by the American Arbitration Association in accordance with Commercial Arbitration Rules, then in effect." (Doc. 14-6, at 53). When a contract clearly states that the American Arbitration Association's ("AAA") Commercial Arbitration Rules govern arbitration, courts must apply the AAA's rules. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020). Rule 7(a) of the AAA's Commercial Arbitration Rules states, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." *Commercial Arbitration Rules and Mediation Procedures, Rule 7(a)*, American Arbitration Association, https://www.adr.org/media/1wanubnp/2025_commercialrules_web.pdf. Under this rule, an arbitrator, and not a court, must first decide whether certain claims fall outside of the scope of the arbitration agreement. *See Richardson*, 811 F. App'x at 103; *see also Blueprint Cap. Advisors, LLC v. Div. of Inv.*, No. 23-1116, 2023 WL 8866554, at *2 (3d Cir. Dec. 22, 2023) (nonprecedential). Accordingly, Deleman's arguments that his claims fall outside of the scope of the arbitration agreement are for the arbitrator to decide. (Doc. 15, at 8-11).

The Court finds that the undisputed record before the Court establishes that the dispute between Deleman and HighLevel is subject to the arbitration clause contained in HighLevel's terms of service. As such, HighLevel's motion to compel arbitration is **GRANTED**.

### III.   PRELIMINARY INJUNCTION STANDARD

Preliminary injunctions are reserved for "extraordinary situations" and present numerous concerns, including the nature of proceedings, the granting of a remedy based upon a prediction of the law, and the prejudging of the merits of a case. *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dept. of Safety & Homeland Sec.*, 108 F.4th 194, 198-200 (3d Cir. 2024). When faced with a motion for preliminary injunction and a motion to compel arbitration, generally, courts do not delve into the merits of an arbitrable dispute as the jurisdiction of the court is limited to staying the civil action and compelling the parties to arbitrate. *Thompson v. Nienaber*, 239 F.Supp.2d 478, 484–85 (D.N.J. 2002) (citing *John Hancock Mutual Life Ins. Co. v. Olick,* 151 F.3d 132, 136–37 (3d Cir.1998)). The Third Circuit has carved out a limited exception to this rule, however, by giving the court jurisdiction to consider the merits of the dispute for the sole purpose of determining whether temporary injunctive relief is necessary pending the arbitration of the dispute. *Thompson*, 239 F.Supp.2d at 484-485; *see also Ortho Pharm. Corp. v. Amgen, Inc.,* 882 F.2d 806, 812 (3d Cir. 1989); *see also Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 47–49 (1st Cir.1986) (citing cases). The goal of the temporary injunctive relief is to preserve the *status quo* until the parties are able to arbitrate the merits of their dispute. *Ortho,* 882 F.2d at 813. Thus, to succeed on a motion for preliminary injunction in an arbitrable case, a party must demonstrate:

> (1) that it is likely to succeed on the merits in the arbitration proceeding; (2) **that it will be irreparably harmed in the meantime in a manner that threatens to render the arbitration proceeding meaningless if the court does not grant preliminary injunctive relief pending the outcome of the arbitration proceeding;** (3) that the possibility of harm to ... other interested persons if injunctive relief is granted would not outweigh the harm it will suffer if injunctive relief is denied; and (4) that the injunction it seeks will serve the public interest. *Wright Med. Tech., Inc. v. Somers*, 37 F.Supp.2d 673, 679 (D.N.J. 1999).

*Thompson*, 239 F.Supp.2d at 485 (emphasis added). The Third Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits. *See Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990); *see also Juul Labs, Inc. v. 4X PODS.*, 439 F.Supp.3d 341, 350 (D.N.J. 2020). Further, a preliminary injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion on both factors. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir. 1989). If the movant fails to carry this burden on these two elements, the motion should be denied. *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.1989) (emphasis in original) (*quoting Morton v. Beyer*, 822 F.2d 364 (3d Cir. 1987)).

Deleman has not met his burden of showing he will be irreparably harmed in a manner that threatens to render the arbitration proceeding meaningless. In arguing that he will be irreparably harmed if his motion is not granted, Deleman points to monetary loss he claims he will suffer, loss of client lists, and loss of his business. (Doc. 1-2, at 16-17; Doc. 3, at 2).[5] Although Deleman testified as to what his estimated losses will be, economic harms or losses are generally not considered irreparable harm in the context of such extraordinary emergency

---

[5] At one point during argument, Deleman asserted that his business had already been lost. To the extent that Deleman complains about injuries that have already occurred, past harm is not a basis for preliminary injunctive relief. *Crawford v. Cnty. of Chester*, 2024 WL 3444618, at *4 (E.D.Pa. 2024); *see also Miller v. Little*, No. 21-1941, 2022 WL 2070282, at *2 (M.D. Pa. June 8, 2022) ("'A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm'" (quoting *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997))).

relief. *Benner v. Wolf*, 461 F.Supp.3d 154, 167 (M.D.Pa. 2020); *see also ECRI v. McGrawHill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Although economic losses may serve as the basis for irreparable harm when a business would be "forced to shut down" as the result of the loss, such a showing is an onerous one. *Great Lakes Dredge & Dock Company, LLC v. Philly Shipyard, Inc.*, 759 F.Supp.3d 580, 594 (E.D.Pa. 2024) (citing *Instant Air Freight Co.*, 882 F.2d at 802) (holding that the loss of eighty percent of plaintiff's business as a result of defendant's conduct was not enough of an economic loss to constitute irreparable harm). Deleman has not met that showing here, and indeed, nothing in the record, except for Deleman's bald and unsupported assertions, supports a finding that he could not operate his business using a different digital platform or services provider. While the Court recognizes that Deleman's losses may be significant, they are financial and largely hypothetical. To the extent Deleman attempts to convert monetary harm into irreparable harm by claiming that HighLevel's breach of the contract has damaged his reputation, this claim fails to establish irreparable harm. It is not sufficient to allege that a defendant's breach will deny plaintiff the resources needed to meet its contractual obligations with its own customers. *Great Lakes Dredge & Dock Company, LLC*, 759 F.Supp.3d at 595.

Finally, arbitrators have the ability issue injunctive relief where warranted. *See Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 489 (E.D. Pa. 2011); *see also Pyo v. Wicked Fashions, Inc.*, No. CIV09-2422 (DRD), 2010 WL 1380982, at *7 (D.N.J. Mar. 31, 2010). Even if this Court were to assume that HighLevel continuing to deny Deleman access to HighLevel's platform and services would cause irreparable damage, Deleman provides no argument or evidence or other basis to support a finding that sending this case to

arbitration would render the arbitration meaningless when Deleman could ask the arbitrator for the injunctive relief he seeks.

When parties are subject to a binding arbitration agreement, Courts may only issue injunctive relief where a party "will be irreparably harmed. . . in a manner that threatens to render the arbitration proceeding meaningless." *Thompson*, 239 F.Supp.2d at 485. Here, Deleman has failed to present evidence that he will be irreparably harmed, and the Court cannot issue injunctive relief. Accordingly, Deleman's motion for a temporary restraining order and preliminary injunction is **DENIED.** (Doc. 3).

### IV.  CONCLUSION

For the foregoing reasons, HighLevel's motion to compel arbitration (Doc. 14) is **GRANTED** and Deleman's motion for a temporary restraining order and preliminary injunction (Doc. 3) is **DENIED.** Deleman's motions to clarify the scope of relief sought (Doc. 18; Doc. 19), and motion to file a *sur reply* brief (Doc. 31) are **DENIED** as moot. Deleman is compelled to arbitrate his claims with HighLevel in accordance HighLevel's terms of service. This case is **STAYED** pending arbitration.

An appropriate Order follows.

Dated: July 25, 2025                                                   *s/ Karoline Mehalchick*
                                                                        **KAROLINE MEHALCHICK**
                                                                        **United States District Judge**