UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN MICHAEL DELEMAN,

             Plaintiff,

    v.

HIGHLEVEL, INC.,

             Defendant.

CIVIL ACTION NO. 3:25-CV-01284

(MEHALCHICK, J.)

**MEMORANDUM**

Plaintiff John Michael Deleman ("Deleman") commenced this *pro se* action on July 9, 2025, by filing a complaint in the Luzerne County Court of Common Pleas. (Doc. 1-2). On July 14, 2025, Defendant HighLevel, Inc. ("HighLevel") removed this action to this Court based on diversity jurisdiction. (Doc. 1). On July 15, 2025, Deleman filed a motion for a temporary restraining order and preliminary injunction. (Doc. 3). On July 16, 2025, HighLevel filed a motion to compel arbitration. (Doc. 14). On July 25, 2025, this Court issued an order denying Deleman's motion for a temporary restraining order, granting HighLevel's motion to compel arbitration, and staying this case pending arbitration. (Doc. 41). Before the Court is Deleman's motion to lift the stay. (Doc. 42). For the reasons discussed below, the Court **DENIES** Deleman's motion.

I.    **F**ACTUAL AND **P**ROCEDURAL **B**ACKGROUND

Deleman operates Elite Marketing Authority Co. ("EMA"), a marketing SaaS business.[1] (Doc. 1-2, at 3). HighLevel is a digital services provider and platform which

---

[1] "SaaS" stands for "software as a service" and is a software distribution method in which a service provider gives customers access through the internet to applications, usually ones developed and owned by the provider. *SaaS*, Dictionary.Com, DICTIONARY.COM, https://www.dictionary.com/browse/saas (last visited Nov. 19, 2025).

provides marketing agencies with various tools to design websites, manage social media, manage client-relations, and manage client communications. (Doc. 1-2, at 3). Deleman and EMA utilized HighLevel's platform and services since 2019. (Doc. 22, ¶¶ 1, 15). According to Deleman, he began utilizing HighLevel's platform and services after making a verbal agreement with HighLevel CEO Shaun Clark ("Clark"). (Doc. 22, ¶¶ 1, 15). On November 30, 2024, Deleman encountered HighLevel's terms of service and clicked a box accepting those terms of service to obtain a fifty percent discount on HighLevel's services. (Doc. 14-5, ¶¶ 1, 15; Doc. 22, ¶¶ 1, 15). HighLevel's terms of service contain arbitration provision which states in relevant part:

> Any controversy or claim arising out of or relating to these Terms shall be exclusively settled by arbitration administered by the American Arbitration Association in accordance with Commercial Arbitration Rules, then in effect. This arbitration provision is governed by the Federal Arbitration Act. The arbitration proceedings shall be held in Dallas, Texas. Any arbitration award may be entered in a court of competent jurisdiction.

> (Doc. 14-6, at 54).

HighLevel's terms of service also contain a merger clause which states:

> Except as noted below, these Terms constitute the sole and entire agreement between you and HighLevel with respect to the Platform and supersede all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to the Platform. These Terms may not be altered, supplemented, or amended by the use of any other document(s) unless such document is signed by an authorized representative of HighLevel.

> (Doc. 14-6, at 52).

HighLevel's terms of services further include a forum selection clause stating, "[t]he laws of the State of Texas will govern these Terms of Service and any disputes under them, without giving effect to any principles of conflict of laws." (Doc. 14-6, at 53). The terms of service contain a limitation on liability clause which states:

> Your exclusive remedy and our entire liability, if any, for any claims arising out of these Terms and your use of the Platform or the Services shall be limited to the amount you paid us for Services purchased on the Platform during the three (3) month period before the act giving rise to the liability, provided however, this limitation will not apply to you if you only use the free Services, and in this case, if HighLevel determines to have any liability to you or any third party arising from your use of the free Services, then HighLevel's aggregate liability will be limited to one hundred U.S. dollars.

(Doc. 14-6, at 50).

Finally, HighLevel's terms of service contain a clause limiting the time to file claims which states:

> ANY CAUSE OF ACTION OR CLAIM YOU MAY HAVE ARISING OUT OF OR RELATING TO THESE TERMS OR THE PLATFORM MUST BE COMMENCED WITHIN THREE (3) MONTHS AFTER THE EVENT GIVING RISE TO THE ACTION OR CLAIM OCCURRED, REGARDLESS OF WHEN YOU KNEW OR SHOULD HAVE KNOWN ABOUT IT; OTHERWISE, SUCH CAUSE OF ACTION OR CLAIM IS PERMANENTLY BARRED.

(Doc. 14-6, at 51).

On June 17, 2025, HighLevel terminated Deleman's account on the platform, blocked Deleman from accessing its platform, and ceased all services it provided Deleman and EMA. (Doc. 10-9, at 3). On July 9, 2025, Deleman filed a complaint alleging various claims against HighLevel under Pennsylvania law. (Doc. 1-2). In the complaint, Deleman requests both monetary and injunctive relief. (Doc. 1-2, at 16-17).

On July 15, 2025, Deleman filed an emergency motion for a temporary restraining order and preliminary injunction requesting the Court order HighLevel to reinstate Deleman's accounts and enjoin it from further interfering with Deleman's business operations. (Doc. 3). On July 16, 2025, HighLevel filed a motion to compel arbitration. (Doc. 14). The Court denied Deleman's motion for a temporary restraining order and preliminary

injunction, granted HighLevel's motion to compel arbitration, and stayed this case pending

the outcome of arbitration. (Doc. 40; Doc. 41).

Deleman now asks the Court to lift the stay and "restore the case to the Court's active

docket."[2] (Doc. 42). HighLevel opposes the motion, arguing that the Court should deny the

motion both as a motion to lift the stay and as an improperly filed, untimely motion for

reconsideration. (Doc. 44).

## II.    LEGAL STANDARD

### A.  MOTION TO LIFT STAY

"The decision to stay litigation. . . pending the outcome of a related arbitration is one

left to the discretion of the district court." *Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d

196, 199 (3d Cir. 1988). Whether to lift a stay is at the discretion of the Court and "'[w]hen

circumstances have changed such that the court's reasons for imposing the stay no longer exist

or are inappropriate, the court may lift the stay.'" *Sager v. Allied Interstate, LLC*, No. 3:18-CV-

220, 2021 WL 9406785, at *2 (W.D. Pa. Dec. 21, 2021) (quoting *Canady v. Erbe Elektromedizin

GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002)); *see Piazza v. Young*, No. 4:19-CV-00180, 2023

WL 1994388, at *2 (M.D. Pa. Feb. 14, 2023); *see also McCall v. Avco Corp.*, No. 4:18-CV-01350,

2019 WL 2004358, at *1 (M.D. Pa. May 7, 2019). Where new circumstances are not

presented, and no new hardship exists, a motion to lift the stay should be denied. *KGaA v.*

---

[2] The Court notes that Deleman did not file a brief in support with his motion to lift
the stay but rather appears to have incorporated a brief into his motion. (Doc. 42). Deleman
filed a brief in support on October 16, 2025, after HighLevel filed a brief in opposition. (Doc.
44; Doc. 45). Given Deleman's *pro se* status, the Court will liberally construe his initial motion
as being both a brief in support and motion and his second brief as an additional reply brief.
*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating "[a] document filed *pro se* is 'to be
liberally construed'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Bell v.
Pleasantville Hous. Auth.*, 443 F. App'x 731, 735 (3d Cir. 2011) (stating the same).

*Hopewell Pharma Ventures, Inc.*, No. CV 22-1365, 2025 WL 894551, at *3 (D. Del. Mar. 24, 2025) (internal citations and quotations omitted); *see Piazza*, 2023 WL 1994388, at *3.

B.  MOTION FOR RECONSIDERATION

A motion for reconsideration is a device of limited utility which may only be used to correct manifest errors of law or fact or to present newly discovered precedent or evidence. *Harasco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail, a party seeking reconsideration must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Cas. Co. v. Diversified Indus.*, Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

III.  DISCUSSION

Deleman avers that the Court should lift its stay for three reasons: 1) arbitration is no longer available because HighLevel failed to initiate arbitration proceedings; 2) HighLevel waived its rights to arbitration by failing to initiate arbitration proceedings;[3] and 3) continuing to enforce the relevant arbitration agreement would be unconscionable. (Doc. 42).

A.  DELEMAN IS THE PARTY REQUIRED TO INITIATE ARBITRATION PROCEEDINGS.

---

[3] Deleman also argues that HighLevel waived arbitration by removing this case to federal court. (Doc. 42, at 6). However, removing a case to federal court does not constitute waiver of the right to arbitration. *See Grimm v. First Nat. Bank of Pennsylvania*, 578 F. Supp. 2d 785, 796 (W.D. Pa. 2008); *see also Kelly v. Amazon.com, Inc.*, No. 3:22-CV-00821, 2022 WL 17584234, at *5 (M.D. Pa. Dec. 12, 2022), *dismissed*, No. 22-3387, 2023 WL 4058327 (3d Cir. Jan. 4, 2023); *see also Martin v. Discover Bank*, No. CIV.A. 12-2469, 2012 WL 6197992, at *3 (E.D. Pa. Dec. 3, 2012).

Deleman avers that the Court should lift the stay because HighLevel never initiated arbitration, "arbitration has expired," and HighLevel waived its right to arbitration by failing to initiate arbitration. (Doc. 42, at 2-4, 6-7). HighLevel counters that the Court should reject Deleman's arguments because under both the terms of the arbitration agreement and the Court's previous order compelling arbitration, Deleman was obligated to initiate arbitration, not HighLevel. (Doc. 44, at 5-7). HighLevel further argues that the timeliness of arbitration is a matter for the arbitrator to decide and, accordingly, the Court must reject Deleman's arguments based on arbitration expiring. (Doc. 44, at 5).

Where an arbitration agreement clearly states that the American Arbitration Association's ("AAA") Commercial Arbitration Rules govern arbitration, courts must apply the AAA's rules. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (nonprecedential) (stating that because the relevant contract stated that the AAA's rules applied, "[c]learly and unmistakably then, the AAA Rules govern the arbitration of any dispute between [the parties]"); *see also loanDepot.com v. Crosscountry Mortg., Inc.*, No. CV 18-12091, 2019 WL 2613265, at *5 (D.N.J. June 24, 2019) (applying the AAA's rules).

AAA Rule 4 states "[arbitration] shall be initiated by the initiating party ('claimant') filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration." *Commercial Arbitration Rules and Mediation Procedures*, American Arbitration Association, https://www.adr.org/media/1wanubnp/2025_commercialrules_web.pdf (hereinafter "AAA Rules"). Relatedly, AAA Rule 5 states "[a] respondent may file an answering statement within 14 calendar days after notice of the filing of the Demand" or "a counterclaim at any time after notice of the filing of the Demand." AAA Rules. Based on these rules, the party

bringing the claim is the party who must file a demand for arbitration with the AAA because it would defy logic for a party defending itself against a claim to initiate an action based on the other party's claims, be labeled as a "claimant," and then have the party with a claim file an answer and counterclaims. *See Jaludi v. Citigroup*, No. 3:15-CV-2076, 2023 WL 9604965, at *4 (M.D. Pa. Nov. 15, 2023), *report and recommendation adopted*, No. CV 3:15-2076, 2024 WL 554146 (M.D. Pa. Feb. 12, 2024), *aff'd,* No. 24-1358, 2025 WL 289173 (3d Cir. Jan. 24, 2025) (noting that the AAA's rules indicate that the party with the claim "bears the burden of initiating arbitration"). This interpretation of the AAA's rules is consistent with the general rule that after a plaintiff is compelled to arbitrate their claims, a district court may dismiss an action for failure to prosecute if the plaintiff refuses to commence arbitration against the defendant. *See R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC*, 45 F.4th 655, 658 (3d Cir. 2022); *see also Hoffman v. Genpact*, No. 3:22-CV-00009, 2023 WL 6609020, at *2 (M.D. Pa. Oct. 10, 2023).

The Court previously determined that the parties are subject to an enforceable arbitration agreement. (Doc. 40, at 10-13). The arbitration agreement states "[a]ny controversy or claim arising out of or relating to these Terms shall be exclusively settled by arbitration administered by the American Arbitration Association in accordance with Commercial Arbitration Rules, then in effect." (Doc. 14-6, at 53). Based on this language, the Court must apply the AAA's rules for arbitration. *See Richardson*, 811 F. App'x at 103; *see also loanDepot.com*, 2019 WL 2613265, at *5. Under the AAA rules, it is Deleman, not HighLevel who is obligated to file a demand for arbitration with the AAA. *See* AAA Rules; *see also Jaludi,* 2023 WL 9604965, at *4 (finding that under the AAA's rules, "the complaining party, here, [plaintiff], should initiate arbitration"). This reading is consistent with the Court's previous

order stating that "Deleman is compelled to arbitrate his claims with HighLevel in accordance HighLevel's terms of service." (Doc. 41, at 1). Because Deleman, not HighLevel, was required to initiate arbitration proceedings, the Court will not penalize HighLevel based on Deleman's failure to do so.

Deleman also avers the Court should lift the stay because arbitration is no longer available. (Doc. 42, at 2). According to Deleman, under the arbitration agreement, all demands for arbitration must be brought within three months "after the cause of action accrues" and more than three months have passed since his cause of action accrued. (Doc. 42, at 2). Putting aside that it was Deleman, not HighLevel, who failed to initiate arbitration, the timeliness of a demand for arbitration "is a matter presumptively for the arbitrator, not for the judge." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002); *see Bakery, Confectionary, Tobacco Workers & Grain Millers Int'l Union, AFL-CIO, CLC Loc. 6 v. Morabito Baking Co.*, No. 10-CV-5141, 2011 WL 1883298, at *3 (E.D. Pa. May 18, 2011). Accordingly, Deleman's failure to initiate arbitration proceedings is not a basis to lift the stay.

B.  THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE.

Deleman also submits that the Court should lift its stay pending arbitration because the arbitration agreement is unconscionable. (Doc. 42, at 4-5). Deleman provides two arguments as to why the agreement is unconscionable: 1) he previously relied on an oral agreement with Clark, HighLevel's CEO, which did not have an arbitration provision, and 2) under the arbitration agreement, he can only recover a maximum of $1,491, and he would be required to spend between $2,650 to $4,500 to arbitrate his claims in Texas. (Doc. 42, at 4-5). HighLevel avers that this argument is a *de facto* untimely motion for reconsideration because

the Court already rejected Deleman's arguments that the arbitration agreement was unconscionable when granting its motion to compel arbitration. (Doc. 44, at 7-8).

As an initial matter, HighLevel is correct that the Court previously considered and rejected Deleman's argument that the arbitration agreement is unconscionable. (Doc. 40, at 12). Although Deleman denies that his motion is a motion for reconsideration, his argument is premised on a disagreement with the Court's previous ruling, and he requests the Court reconsider whether the arbitration agreement is unconscionable. (Doc. 42, at 4-5; Doc. 46, at 3-4). "[A] party may not 'avoid both the filing deadlines of a motion for reconsideration and the legal requirements of such a motion by disguising such a motion as. . . another motion.'" *Migliore v. Archie*, No. CIV.A. 11-4018, 2014 WL 2738222, at *3 (E.D. Pa. June 17, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Mallela*, No. CV-00-4923, 2002 WL 31946762, at *14 (E.D.N.Y. Nov. 21, 2002)); *see also Viking Yacht Co. v. Composites One LLC*, 622 F. Supp. 2d 198, 200 (D.N.J. 2009), *aff'd.* 385 F. App'x 195 (3d Cir. 2010) (noting that a court may deny a motion *in limine* where it is in effect an untimely motion for reconsideration filed as a motion *in limine*). Under Local Rule 7.10, "[a]ny motion for reconsideration. . . must be accompanied by a supporting brief and filed within fourteen (14) days after the entry of the order concerned." Deleman filed his motion seventy-one days after this Court's order. (Doc. 41; Doc. 42). On this basis alone, the Court may reject Deleman's arguments regarding unconscionability. *See Ndaula v. Clinton Cnty. Corr. Facility*, No. 1:20-CV-1160, 2021 WL 620934, at *3 (M.D. Pa. Feb. 17, 2021); *see also Jones v. Behe*, No. 1:17-CV-493, 2017 WL 2778628, at *2 (M.D. Pa. June 27, 2017) (stating that because a plaintiff "missed the deadline [to file a motion for reconsideration] by more than two weeks" the motion "must be denied as untimely").

However, even if the Court considers the merits of Deleman's motion, reconsideration would not be warranted. Deleman presented this exact same argument and does not present any binding caselaw or facts the Court had not previously considered.[4] *See Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (denying a motion for reconsideration where the plaintiff repeated arguments already rejected by the court); *see also Smalis v. City of Pittsburgh*, No. 2:19-CV-1609, 2024 WL 2319508, at \*2 (W.D. Pa. May 22, 2024) (same).

Deleman presents a new argument that he had not previously raised that the arbitration agreement is unconscionable because under HighLevel's terms of service, the cost of arbitration would exceed his maximum potential reward if he were to prevail in arbitration.[5] (Doc. 42, at 4-5). According to Deleman, the costs of arbitration would range from $2,650 to $4,500, and HighLevel's terms of service limit his potential reward to a maximum of $1,491. (Doc. 42, at 4-5). Deleman's argument fails for two reasons. First, he does not present any evidence or provide any allegations in the complaint supporting his assertions regarding the costs of arbitration. Texas law governs the arbitration agreement due to a forum selection clause in HighLevel's terms of service. (Doc. 14-6, at 53; Doc. 40, at 4). "Under Texas law, the party asserting unconscionability of a contract bears the burden of

---

[4] Deleman also requests, in the alternative, that the Court "permit discovery into Plaintiff's onboarding agreement with CEO Shaun Clark." (Doc. 45, at 11). However, this discovery is unnecessary because under the merger clause in HighLevel's terms of service, any agreement between Clark and Deleman is superseded by HighLevel's terms of service. (Doc. 14-6, at 52). Thus, even if discovery reveals that Deleman had an oral agreement with Clark which did not contain an arbitration agreement, that oral agreement would not change the fact that Deleman is now subject to an arbitration agreement. Accordingly, Deleman's request for discovery is **DENIED**. (Doc. 45, at 11).

[5] The Court notes that although Deleman filed an exhibit he claims to be HighLevel's terms of service, that exhibit does not actually contain HighLevel's terms of service and is instead what appears to be an AI generated statement describing the terms of service. (Doc. 42-1). The Court will rely on the terms of service previously filed by HighLevel. (Doc. 14-6).

proving. . . unconscionability." *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005); *see also Ramirez v. 24 Hour Fitness USA, Inc.*, No. CIV.A. H-12-1922, 2013 WL 2152113, at *3 (S.D. Tex. May 16, 2013), *aff'd*, 549 F. App'x 262 (5th Cir. 2013) (stating "[w]hether a contract is unconscionable is a question of law, and the party asserting unconscionability bears the burden"). "Speculation about possible harm is insufficient to establish unconscionability. Rather, the party opposing arbitration must offer evidence such as invoices, expert testimony, reliable cost estimates, and affidavits to prove the likelihood of incurring expected costs." *Taylor Morrison of Texas, Inc. v. Skufca*, 650 S.W.3d 660, 680 (Tex. App. 2021) (citations omitted); *see Travelers Cas. & Sur. Co. of Am. v. James*, No. 3:15-CV-1999-N, 2016 WL 9306254, at *7 (N.D. Tex. Oct. 5, 2016) (finding a plaintiff failed to "meet its burden" to establish unconscionability where it "fail[ed] to provide any evidence of. . . unconscionability"). Deleman asserts that he will incur various costs associated with arbitrating this case in Texas, but he does not support these assertions with any facts properly alleged in the complaint or with evidence outside of what appears to be an artificial intelligence generated estimation of costs. (Doc. 42, at 5; Doc. 43-2, at 5; Doc. 45, at 10). Because Deleman fails to present proper evidence, he fails to meet his burden of establishing unconscionability. *See Taylor Morrison of Texas, Inc.*, 650 S.W.3d at 680; *see also Travelers*, 2016 WL 9306254, at *7.

    Second, Deleman's assertion that he may only recover a maximum of $1,491 is not supported by the record. As discussed *supra* Section III.A, under the arbitration agreement, the Court must apply the AAA's rules for arbitration. (Doc. 14-6, at 53); *see Richardson*, 811 F. App'x at 103. Under AAA Rule 49, "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties."

AAA Rules. AAA Rule 49 is consistent with the general principle that arbitrators have a "'wide latitude' in fashioning an appropriate remedy." *Sherrock Bros. v. DaimlerChrysler Motors Co., LLC*, 260 F. App'x 497, 502 (3d Cir. 2008) (nonprecedential) (citing *Coll. Hall Fashions, Inc. v. Philadelphia Joint Bd. Amalgamated Clothing Workers of Am.*, 408 F. Supp. 722, 728 (E.D. Pa. 1976)). Further, if the arbitrator abuses its discretion in fashioning a remedy, the Court may "vacate an arbitration award [after arbitration] if 'the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Verizon Pennsylvania, LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000*, 13 F.4th 300, 306 (3d Cir. 2021) (quoting 9 U.S.C.A. § 10 (a)(4)). The arbitrator may also issue injunctive relief where warranted. *See Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 489 (E.D. Pa. 2011); *see also Pyo v. Wicked Fashions, Inc.*, No. CIV09-2422, 2010 WL 1380982, at *7 (D.N.J. Mar. 31, 2010).

HighLevel's terms of service, which contain the arbitration agreement, only expressly limit liability for claims arising out of "these Terms [of service] or [the user's] use of the Platform or the Services." (Doc. 14-6, at 50). Deleman argues that this provision limits his total recovery to a maximum of $1,491, however, his claims do not all arise out of HighLevel's terms of service or his use of the platform. For example, Deleman raises intentional infliction of emotional distress and defamation claims. (Doc. 1-2, at 6-7, 9-10). A reasonable arbitrator may use their discretion under AAA Rule 49 to determine that Deleman is entitled to damages outside of the agreement's listed limit. *See Sherrock Bros.*, 260 F. App'x at 502 (noting an arbitrator has wide ranging discretion). Further, Deleman requests injunctive relief which he asserts is necessary to prevent him from continuing to lose revenue. (Doc. 1-2, at 16-17). According to Deleman, he lost over a million dollars of revenue after being removed from

HighLevel's platform, and injunctive relief is necessary to "prevent further harm." (Doc. 1-2, at 16-17). The arbitrator may issue Deleman injunctive relief if appropriate. *See Somerset Consulting, LLC*, 832 F. Supp. 2d at 489; *see also Pyo*, 2010 WL 1380982, at *7. Deleman himself alleges that he stands to gain thousands of dollars by being reinstated onto HighLevel's platform through injunctive relief. (Doc. 1-2, at 16-17). Deleman's assertion that he may only recover a maximum of $1,491 if he were to prevail in arbitration is unfounded.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Deleman's motion to lift the stay pending arbitration. (Doc. 42). The Court further **DENIES** Deleman's request to allow discovery. (Doc. 45, at 11).

An appropriate Order follows.

BY THE COURT:

Dated: January 5, 2026                    *s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **United States District Judge**